IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

GLEN R. JONES,                          )
                                        )
                Plaintiff,              )
                                        )
v.                                      )        Case No. CIV-12-447-L
                                        )
WARREN POWER &                          )
MACHINERY, INC.,                        )
                                        )
                Defendant.              )


## O R D E R

Plaintiff Glen R. Jones (plaintiff or "Jones") brought this action alleging race discrimination and retaliation against his former employer, Warren Power & Machinery, Inc. (defendant or "Warren Cat").  This matter is before the court on the defendant's Motion for Sanction of Dismissal **[Doc. No. 27]**.  For the reasons more fully set forth below, the court finds that defendant's motion for the sanction of dismissal with prejudice should be granted.

Initially, the court finds that plaintiff's Motion to Strike Defendant's Supplemental Exhibit to Defendant's Reply to Plaintiff's Response to Motion for Sanction of Dismissal **[Doc. No. 36]** should be denied.  Leave of court was not required for the filing of the supplemental exhibit itself, and the court has properly considered the exhibit in its evaluation of the motion.  Additionally, the court finds that the record of plaintiff's conduct in this case is sufficiently developed such that an evidentiary hearing is not required.  Further, a hearing would increase the costs

already incurred by defendant in bringing this matter to the court's attention.

Therefore, defendant's Motion for Evidentiary Hearing **[Doc. No. 34]** is also denied.

Turning to the issue of sanctions, the United States Court of Appeals for the Tenth Circuit has stated that a district court has the inherent equitable powers to impose the sanction of dismissal with prejudice because of abusive litigation practices during discovery.  Garcia v. Berkshire Life Insurance Company of America, 569 F. 3d 1174, 1179 (10th Cir. 2009) (citations omitted).  Because of the harshness of dismissal, however, due process requires that the violation be predicated upon willfulness, bad faith, or some fault of the petitioner rather than an inability to comply.  Id., *citing* Archibeque v. Atchison, Topeka & Santa Fe Ry. Co., 70 F.3d 1172, 1174 (10th Cir. 1995).  According to the Tenth Circuit, "[w]hile recognizing that there is no rigid test for determining when such a sanction is appropriate, we have suggested that a district court ought to evaluate five factors before imposing a dismissal sanction: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions.  Id., *citing* Ehrenhaus v. Reynolds, 965 F.2d 916, 920-21 (10th Cir. 1992).  Again, these factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction.  Ehrenhaus, 965 F. 2d at 921.  The court should ordinarily evaluate these factors on

2

the record.  Id. (citation omitted).

As detailed by defendant in its motion, plaintiff knowingly provided false information during discovery in this case.  Significantly, defendant has identified numerous instances of plaintiff's dishonesty in connection with his claims.  Plaintiff's unsatisfactory after-the-fact attempts to minimize the egregiousness of his behavior cannot protect him from the consequences of his own actions.  When the above factors are considered, it is apparent that they weigh in favor of the sanction of dismissal with prejudice in this case.

Defendant's 22-paragraph Statement of Relevant Facts (Doc. No. 27, pp. 7-16) provides a factual background for defendant's contention that the record in this case conclusively demonstrates that plaintiff (A) failed to disclose felony convictions on his employment application and provided false testimony relating to his felony convictions under oath during his deposition (¶¶ 1-7); (B) provided false information under oath in an answer to an interrogatory (¶¶8-12); (C) provided false information regarding his education on his employment application, in his EEOC Notice of Charge of Discrimination, in his Complaint filed in this case, and during his deposition (¶¶ 13-20); and (D) provided false deposition testimony regarding his earnings after his termination (¶¶ 21-22).  These paragraphs are set forth below (citations are to the Exhibits supporting the motion [Doc. No. 27]).

1. Jones filled out an application for full-time employment with Warren Cat on May 9, 2006.  Jones testified that he provided the information on the form, and that

he understood he was supposed to provide accurate and truthful information. *Deposition of Glen Jones*, pp. 93-94, 99 [Exhibit 1].

2. Jones submitted the employment application, certifying "that all information provided by me in connection with my application, whether on this document or not, is true and complete, and I understand that any misstatement, falsification, or omission of information given in my application or interview(s) may be grounds for refusal to hire or, if hired, termination." *Jones Employment Application*, p. 4 [Exhibit 2].

3. The employment application contains the following question: "Have you ever been convicted of a felony within the past seven (7) years," yes or no. It also states: "If your answer is 'Yes', explain below. A conviction may not disqualify you, a false statement will." *Jones Employment Application*, p. 1 [Exhibit 2]. Jones saw that language and understood it when he was filling out the employment application. *Deposition of Glen Jones*, pp. 98-99 [Exhibit 1].

4. Jones answered the felony conviction question "yes," and identified a 2000 DUI in El Reno, Oklahoma. *Jones Employment Application*, p. 1 [Exhibit 2]; *Deposition of Glen Jones*, p. 99 [Exhibit 1].

5. During his deposition, Jones testified he could not remember any other felony convictions during the seven (7) years preceding his employment application:

Q:     Is that the only conviction of a felony that you had during the seven years preceding the submission of this application?

4

A:      I'm not sure if I did or not.

Q:      You don't remember if, during this seven year period, you had a felony conviction?

A:      That was a former life, sir, so I don't keep up with my past.

Q:      What, having felony convictions was a form of life?

A:      Well, it's a past life.

Q:      Of your's?

A:      Don't you have a past life?

Q:      The question is, as you sat there on May, whatever, 2006, did you have a memory of the preceding seven years and know whether you had been convicted of a felony during that period of time?  That's the question.

A:      I was told to put what I remembered that I did during that time.  And I did just that.

Q:      So, as you sit here today, your testimony is that when you submitted the application, the only felony conviction that you remembered when you were submitting your application was this DUI, right?

A:      Yes, sir.

Q:      All right.  There were others, though, weren't there?

A:      Like I say, I don't know what my past was.

Q:      You don't know?

A:      I didn't keep up with it.

*Deposition of Glen Jones*, pp. 100-01 [Exhibit 1].

6.  In preparation for Jones's deposition, Warren Cat's counsel conducted a public records search for any legal proceedings involving Jones.  Warren Cat's counsel discovered that Jones had two (2) felony convictions during the seven (7) years prior to completing his employment application which he did not disclose to

Warren Cat: a felony conviction for carrying a firearm after felony conviction to which he plead guilty in April, 2001, and a felony conviction for DUI to which he plead guilty in July, 2002. *Records of Jones Legal Proceedings*, pp. 1-22 [Exhibit 3].

7.   Although Jones testified he did not remember any other felony convictions during that period and disclosed what he remembered – the one DUI conviction – when shown the documents evidencing the two (2) felony convictions he did not disclose, Jones testified:

Q:     Mr. Jones, the question is simply this.  This crime of carrying a firearm, this conviction occurred within the seven years preceding your application to Warren Cat, yes or no?

A:     According to the paperwork, it says that, yes, sir.

Q:     All right.  And so, to be truthful and accurate, you would have to disclose this conviction on your application, correct?

A:     Yes sir.  And I did that.

. . .

Q:     . . . Your job application, which is Exhibit Number 1 to your deposition, this one right here, does not contain any reference to the conviction for carrying a firearm in 2001, does it, sir?

A:     Well, it's not on this piece of paper you guys got.

Q:     That is true.  So what are we to make of that, Mr. Jones, that you gave the information to someone and somehow the information just didn't make it to this job application?  Is that what you're telling me?

A:     What I'm telling you, sir, is I disclosed the information of this particular charge.

*Deposition of Glen Jones*, pp. 106-09 [Exhibit 1].  Although Jones acknowledged

that if he were filling out the Warren Cat employment application right now, he would

include the two (2) felony convictions he did not disclose, *id.* at pp. 120-21, he then

testified:

Q:     . . . Did you understand at the time you became employed by Warren
Cat that if you made false statements in response to questions in your application,
that you either wouldn't be hired or you would be terminated if it was found out after
you were hired.  You understood that, didn't you, Mr. Jones?

A:     Well, I didn't make any false statements so I didn't have to worry about
that, sir.

*Deposition of Glen Jones*, p. 122 [Exhibit 1].

8.  Warren Cat issued an interrogatory to Jones seeking information regarding

his involvement in other legal proceedings.  Jones provided the following verified

answer, under oath:

**INTERROGATORY NO. 20**: Has Plaintiff been involved in any legal
action, lawsuit, or other court proceeding other than this lawsuit?  If so, please state
the nature of the action, the name of the parties involved in the action, disposition of
the action, the attorney representing Plaintiff, and state, county, and case number of
the action.

**RESPONSE**: Objection.  Irrelevant, not reasonably calculated to lead to
admissible evidence, an improper invasion into Plaintiff's privacy and intended to
harass and embarrass Plaintiff.  Further, the Interrogatory is over broad and unduly
burdensome, as it is not limited in time or scope.  Plaintiff may not recall each and
every legal action, court proceeding or other lawsuit in which he has been involved
in his lifetime.  Subject to and without waiving the objections, Plaintiff states that he
has not been involved in a legal action, lawsuit or court proceeding in the last ten
(10) years.

*Plaintiff's Responses to Defendant's Discovery*, Answer to Interrogatory No. 20 and

Verification [Exhibit 4].

9.   During the ten (10) years prior to answering Warren Cat's Interrogatory No. 20 on June 21, 2012, in which he stated under oath that he had not been involved in a legal action, lawsuit or court proceeding in the last ten (10) years, Jones:

- was involved in a divorce proceeding in Canadian County in April, 2003, *Records of Jones Legal Proceedings*, pp. 23-25 [Exhibit 3];

- plead guilty to a misdemeanor public intoxication charge in August, 2004, *id.* at pp. 26-27;

- filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Western District of Oklahoma on October 12, 2005, *id.* at pp. 28-29;

- filed a civil lawsuit against Dollar General Corporation in Oklahoma County on January 13, 2011, for injuries allegedly sustained in a slip and fall accident.  The case was removed to the United States District Court for the Western District of Oklahoma, *id.* at pp. 32-33; and

- was sued by Mercy Health Center in Oklahoma County District Court, Case No. CS-2011-2021.  *Id.* at p. 34.

10.   After Warren Cat's counsel marked Jones's bankruptcy petition as a deposition exhibit and showed it to Jones, Jones's counsel abruptly halted the deposition, and refused to resume it unless Warren Cat's counsel produced for her and Jones's prior review all other documents Warren Cat's counsel intended to ask

Jones about during his deposition.  Warren Cat's counsel refused to do so.

*Deposition of Glen Jones*, pp. 134-140 [Exhibit 1].

11.  Warren Cat's counsel did not get to ask Jones why he stated in his

bankruptcy schedules, under penalty of perjury, that he made $18,000 in 2005 as

general manager for All American Fitness, when he stated on his Warren Cat

employment application and during his deposition that he earned $30,000 a year,

and his 2005 W-2 Form reflects he earned $30,034.31.  *Records of Jones Legal*

*Proceedings*, pp. 30-31 [Exhibit 3]; *Deposition of Glen Jones*, p. 124 [Exhibit 1];

*Jones Employment Application*, p. 2 [Exhibit 2]; *Jones 2005 W-2 Form* [Exhibit 5].

12.  Warren Cat's counsel did not get to ask Jones about the civil lawsuit he

filed against Dollar General Corporation that he also failed to disclose, and which it

is impossible to believe Jones could have forgotten about.  He was deposed in the

case *several months before* he submitted his answer, under oath, to Warren Cat's

interrogatory, and the case was resolved and dismissed by Jones on February 15,

2012.  *See 11/1/11 Deposition of Glen Jones*, United States District Court, Western

District of Oklahoma, Case No. CIV-2011-94-C, pp. 1-2, 6 [Exhibit 6].

13.  Jones stated on his Warren Cat employment application that he has a

bachelor of science degree in business management from Mid-America Bible

College.  *Jones Employment Application*, p. 3 [Exhibit 2].

14.  In his Notice of Charge of Discrimination filed with the EEOC, Jones

stated: "In December 2010; a technician Brian Haynes (White) was promoted to 2nd

level Supervisor instead of me, when I have a BS degree in Business

Administration; and I had been with the company longer."  Jones signed the charge,

under penalty of perjury, on June 27, 2011.  *EEOC Notice of Charge of*

*Discrimination* [Exhibit 7].

15.  In his Complaint filed in this case, Jones stated "In or around December,

2010, Plaintiff was told by Regional Manager Gilbert Aragon (who is White) that

Haynes had been promoted to Supervisor II and was Plaintiff's new supervisor. . . .

Significantly, Plaintiff has a bachelor's degree in Business Management and had

more tenure as a supervisor with defendant than Haynes.  Such selection was

another act of race discrimination by Defendant."  *Complaint*, ¶ 12 [Doc. 1].

16.  Jones testified during his deposition that he attended Mid-America Bible

College from 1998 to 2000:

Q:  And did you get some kind of degree there?

A:  Well, actually, it's the equivalent of a bachelor's degree in business

management.  And when I actually went to receive it, they said that I had a credit

that I needed to possess before they could actually release it to me.

Q:  Did they ever release it to you?

A:  I never did go finish the credit yet.

Q:  So you didn't actually earn a degree in business management at Mid-

America Bible College, right?

A:  I did earn it.  Like I said, there's one credit that I have to get before I

can possess the paper.

Q:  Right.  You didn't complete all of the course requirements to get the

degree, and; therefore, they did not award you the degree; is that correct?

A:     I was lacking in one credit to finish and to possess the degree.

Q:     Correct.

A:     Yes, sir.

Q:     You just didn't complete all of the requirements for the degree, right?

A:     I was short of one credit.

*Deposition of Glen Jones*, pp. 32-34 [Exhibit 1].  Jones does not have a business

management degree as stated on his Warren Cat employment application, in his

EEOC filing, and in his Complaint.

17.  Notwithstanding, later during his deposition, Jones again falsely asserted

that he has a degree in business management from Mid-America Bible College:

Q:     Well, here is another mistake [on the Warren Cat employment

application].  Where you say over here type of degree, bachelor of science.  That's

not true, is it, Mr. Jones?

A:     Well, I received a business management degree.

Q:     You received a bachelor's degree in business management from Mid-

America Bible College, is that what you're now testifying to?

A:     That's what I told you earlier, that I was short of one credit hour.

Q:     That's correct.  And you were not awarded a degree by Mid-America

Bible College.  That's what you said this morning.  Is that still true?

A:     I mean, I was awarded it but I wasn't awarded it with the physical paper

because they said I needed a credit to possess it.

*Deposition of Glen Jones*, pp. 126-27 [Exhibit 1].

18.  After Jones's deposition, Warren Cat subpoenaed Jones's academic

records from Mid-America Bible College, also known as Mid-America Christian

University.  Warren Cat received Jones's transcript from the college, which confirms

that Jones did not receive a bachelor's degree in business management.  *Mid-*

*America Christian University Subpoena, Notice of Subpoena, and Transcript* [Exhibit

8].[1]

 19.  Jones testified he attended Redlands Community College as a full time

student beginning in 1990 for two (2) continuous years.  *Deposition of Glen Jones*,

pp. 27-28 [Exhibit 1].  He testified he then went back in 1996 for another year, at

which time he obtained an associate's degree in liberal arts:

 Q: . . . And so by the time you had gone three years, apparently three

years, --

 A: Uh-huh.

 Q: – to Redlands Community College, did you come out with some kind of

diploma?

 A: Yeah.  It was a liberal arts degree.

 Q: Well, what exactly does your degree or diploma say?  Does it say that

you have a degree, a bachelor's degree in liberal arts or does it say that you have

something else?

 A: Associate's.

 Q: You have an associate's degree?

 A: Uh-huh.

---

 [1] Defendant later filed a Supplemental Exhibit in support of its reply brief [Doc. No. 35].  The
Exhibit is the Affidavit of the Registrar for Mid-America Christian University.  The Affidavit states in
paragraph 6 that plaintiff "needs to earn at least twenty (20) additional credit hours, not one (1) credit hour,
before he is awarded a degree from Mid-America Christian University."  The Registrar's Affidavit further
states in paragraphs 7 and 8 that Mid-American Christian University does not offer an "equivalent" of a
bachelor's degree, and that Mr. Jones has not earned the "equivalent" of a bachelor's degree from Mid-
American Christian University.

Q:     Yes?

A:     In liberal arts, yes.

Q:     And when was that associate's degree awarded?

A:     '97.  1997.

Q:     Do you have a copy of that diploma?

A:     No, sir.

Q:     Why not?

A:     I probably can get one.

Q:     Were you actually given a diploma by Redlands?

A:     Yes, sir.

Q:     But you didn't keep it?

A:     Well, when I was moving, a lot of my stuff got stolen.

Q:     All right.  So you don't now have possession of it?

A:     Right.

*Id.* at pp. 28-30.  Jones listed his liberal arts "certificate of completion" from Redlands Community College on his Warren Cat employment application.  *Jones Employment Application*, p. 3 [Exhibit 2].

20.  After his deposition, Warren Cat subpoenaed Jones's academic records from Redland's Community College, which indicate that Jones never attended as a full-time student.  They also indicate that while Jones earned a total of sixty-one (61) credit hours at Redlands Community College, he did not earn an associate's degree or certificate of completion.  *Redlands Community College Subpoena, Notice of Subpoena, and Transcript* [Exhibit 9].

21.  Jones testified during his deposition:

Q:     . . . So between June 23, 2011 [when he was terminated from Warren Cat] and August of 2012 when you went to work for Williams-Sonoma, had you no employment of any kind; is that correct?

A:     That is correct.

Q:     Earned no money during that period of time?

A:     As far as I know, yes, sir.

Q:     So the only money you received during that period of time was unemployment?

A:     Yes, sir.

*Deposition of Glen Jones*, pp. 53-55 [Exhibit 1].

22.  According to payroll records produced by Jones's former employer, All American Fitness, Jones was paid *monthly* commission checks in the amount of $100.00 during 2012.  Jones apparently received similar payments in 2007, 2008, 2009, and 2010, for which he was given W-2 Forms.  *Employee, LLC Payroll Records* [Exhibit 10].

In his response, plaintiff essentially admits the factual chronology presented by defendant.  Plaintiff does, however, seek to explain and minimize his actions, and the facts are discussed in the context of the Ehrenhaus factors.  For instance, in the section of his response brief entitled "The Degree of Actual Prejudice to Defendant" [Doc. No. 32, pp. 12-17], plaintiff claims that defendant has suffered no prejudice because he has answered written discovery "to the best of his recollection" and he physically appeared for his deposition.  Plaintiff seeks to distinguish his actions from those appearing in cases cited by defendant.  Plaintiff

claims that he did not manufacture evidence in this case.  Plaintiff also suggests

that his actions did not go to the heart of his claims.  Plaintiff asserts that defendant

has failed to present clear and convincing evidence[2] that he has engaged in

misconduct.  Plaintiff says that defendant's factual allegations are "misleading"

because plaintiff affirmatively told defendant that his felony convictions were part of

his "past life."  Plaintiff claims that he eventually testified honestly (when presented

with information refreshing his memory), thus he did not cause prejudice to

defendant by continuing to categorically deny facts later proven to be true.

    The court agrees with the observation of defendant, however, that under the

circumstances presented here, defendant did suffer actual prejudice because

plaintiff's answers throughout have cast doubt on the veracity of all of his

submissions, thus requiring defendant to spend additional time and money to

corroborate all the information that he has provided.  Further, the record doesn't

include merely one isolated incidence of confusion or misstatement of facts, but

demonstrates a pattern of dishonesty, which casts further doubts on plaintiff's

excuses.  Plaintiff's deception concerning his educational history clearly goes to the

merits of his claims since his Complaint alleges that defendant promoted a white

employee over plaintiff, even though plaintiff had "a bachelor's degree in Business

Management[.]" Complaint [Doc. No. 1, ¶ 12].  However, as demonstrated above,

---

[2]    Whether the court evaluates the factual record under a preponderance of the evidence standard or a clear and convincing evidence standard, the result would be the same.  This is because of the clear and convincing nature of the evidence demonstrating plaintiff's numerous falsehoods in connection with this case, too numerous to be anything less than willful misconduct.

plaintiff does not have a business management degree as stated on his Warren Cat employment application, in his EEOC filing, and in his Complaint. Plaintiff has repeatedly lied about this and other material facts in this lawsuit, causing prejudice to defendant. Thus, this factor weighs in favor of a sanction.

In his response brief on the factor of "Amount of Interference with the Judicial Process" [Doc. No. 32, pp. 17-18], plaintiff similarly argues that he has not interfered with the judicial process because he has testified "to the best of his recollection." In the face of the factual chronology shown by defendant and quoted above, however, the court seriously doubts plaintiff's assertion that he has testified to the best of his recollection. Again, his explanations ring hollow given the sheer number and breadth of the falsehoods discovered by defendant. Plaintiff would have the court condone a plaintiff's choice to "not dwell on his past" when asked direct questions about it under oath, and then to only reluctantly admit certain aspects of the truth when confronted by it in the form of facts and exhibits unearthed by his adversary. The court finds that it cannot condone this process and it will not be excused in this case. The court is concerned that plaintiff, who is represented by counsel, would think that his approach to discovery, especially in light of his ultimate burden of proving his claims for money damages against defendant, would be acceptable. It is not. As noted by defendant: "False testimony and discovery responses – submitted under oath – do not become less false and less the basis for sanctions because they are discovered." Doc. No. 33, p. 6. Plaintiff's untruthful conduct has

affected all aspects of this litigation and has interfered with the pursuit of justice. Thus, this factor weighs in favor of a sanction.

In his response brief on the factor "Culpability of the Litigant" [Doc. No. 32, pp. 18-20], plaintiff primarily refers the court to an affidavit [Exhibit 7], signed by plaintiff on the same day his response was filed.  In the affidavit, plaintiff states that in June 2012, he was diagnosed with a serious medical condition affecting his kidneys. Plaintiff says that at the time he was responding to discovery in July 2012, his "medical condition weighed heavily" on his mind.  The affidavit states that at the time he responded to discovery, plaintiff "did the best to recall events and address those in my discovery responses."  Other than this affidavit, plaintiff's only response as to his own culpability is that his conduct is "not remotely close" to the conduct described in cases cited by defendant.

Significantly, plaintiff does not specifically address or refute his culpability for the other examples provided by defendant as to plaintiff's dishonesty (*i.e.*, on his employment application, in his EEOC charge, in his Complaint, and at his deposition).   And, as noted in defendant's reply brief, when plaintiff was deposed on November 14, 2012, he was asked if he had a medical condition that affected his memory.  Plaintiff answered "not that I'm aware of."  Doc. No. 33, Exhibit 1 (Deposition transcript excerpt), at p. 102, lines 18-20.

In the face of many documented instances of conduct showing deliberate misstatements of fact, plaintiff has chosen to deny personal responsibility for these

17

actions.  The court views plaintiff's self-serving affidavit with a great deal of skepticism.  Further, if plaintiff's health condition rendered him incapable of telling the truth at any point in time, his affidavit does not say so.  Based on the court's experience, litigants are often under pressures of all kinds, yet they generally remain able to tell the truth, particularly when under oath.  The court finds that plaintiff's culpability cannot be easily overlooked or minimized.  Plaintiff's response fails to take into account the totality of his actions as documented by the above facts.  The court has not been advised that plaintiff has ever formally supplemented his false discovery responses.  Therefore, this factor also weighs in favor of a sanction.

As for the next factor, "Advance warning of Dismissal," plaintiff's brief states that plaintiff was given no prior warning from the court or from defendant that the sanction of dismissal was being considered.  The Ehrenhaus case speaks to the court's obligation to warn of dismissal as a sanction.  The Tenth Circuit has made it clear, however, that a warning " . . . is not a prerequisite to the imposition of dismissal sanctions."  Chavez v. City of Albuquerque, 402 F.3d 1039, 1045 (10th Cir. 2005) (citing Archibeque v. Atchison, Topeka & Santa Fe Ry. Co., 70 F.3d 1172, 1174 (10th Cir. 1995)).  "Once a witness swears to give truthful answers, there is no requirement to warn him not to commit perjury or, conversely to direct him to tell the truth.  It would render the sanctity of the oath quite meaningless to require admonition to adhere to it."  Id.  A warning from the court to testify honestly

was not required.

To the extent a further, separate Rule 37.1 conference should have been held between counsel for the parties before the present motion was filed, as asserted by plaintiff, the court finds that such a conference should be excused as it would have been futile.[3] Based upon the transcript of plaintiff's deposition [Doc. No. 27, Exhibit 1, pp. 134-141], it is evident that counsel understood their conflicting positions concerning plaintiff's demand that defendant produce documents its counsel intended to present to plaintiff in advance of any continuation of his deposition. It is also clear to the court that the parties would likely have been unable to resolve this issue on their own.

The court agrees with defendant, however, that plaintiff's demand to defendant's attorney during plaintiff's deposition was improper and contrary to the rules protecting trial preparation materials of the opposing party. *See* Fed. R. Civ. P. 26(b)(3)(A). As noted by defendant, the documents at issue were obtained by defendant's counsel when he conducted a public records search in preparation for plaintiff's deposition. Throughout the pertinent parts of plaintiff's deposition [Doc. No. 27, Exhibit 1, pp. 134-141], and even in plaintiff's response brief [Doc. No. 32, pp. 21-24], plaintiff has tied his demand for the documents used by defendant's counsel at plaintiff's deposition to specific discovery requests. However, these

---

[3] Additionally, a Rule 37.1 conference is not a prerequisite to the court's entry of a sanction of dismissal under its inherent equitable authority.

discovery requests were clearly directed to Warren Cat, the party defendant in this

case.  Plaintiff has provided the court with no authority which would allow a litigant

to use written interrogatories to a *party* for purposes of obtaining materials relating

to the preparation of the opposing party's case from that party's *attorney*.  Plaintiff's

claims of "ambush" are not well founded under the circumstances and do not

provide a basis for denial of defendant's motion.

As for the final factor, "Efficacy of Lesser Sanctions," plaintiff's response [Doc.

No. 32, p. 20] states that no sanctions are appropriate because plaintiff has

responded to discovery requests "to the best of his recollection and has testified

truthfully in as complete detail as possible to his best recollection."  Plaintiff also

states that he is willing to continue his deposition "upon production of the

documents Plaintiff requested in discovery which Defendant intends to present to

Plaintiff during his deposition[.]"

Plaintiff's oft-repeated refrain that he has acted in accordance to the "best" of

his recollection cannot be supported given the extent of his deceit uncovered, thus

far, in this case.  Further, as the court has already explained, his demands

regarding the continuation of his deposition are improper.  The efficacy of lesser

sanctions has not been demonstrated.  Thus, a consideration of this factor also

weighs in favor of the requested sanction of dismissal with prejudice.

In considering the relevant facts of this case in light of all of the Ehrenhaus

factors, the court concludes that plaintiff's action should be dismissed with prejudice

as a sanction for his litigation practices as documented above.  Recognizing that dismissal with prejudice is an extreme sanction, the court firmly believes that a lesser sanction would not serve the interests of justice.  Plaintiff has shown an unwillingness to tell the truth and has sought to make excuses for his own lack of honesty in connection with his claims in this lawsuit.  It would be unfair to defendant and other responsible litigants to excuse plaintiff's actions in this case.

Accordingly, Defendant Warren Power & Machinery, Inc.'s Motion for Sanction of Dismissal **[Doc. No. 27]** is **GRANTED**; a Judgment of Dismissal with Prejudice will be entered on a separate document.  Defendant's Motion for Evidentiary Hearing **[Doc. No. 34]** is **DENIED** and plaintiff's Motion to Strike Defendant's Supplemental Exhibit **[Doc. No. 36]** is also **DENIED**.

It is so ordered this 25th day of March, 2013.

_Tim Leonard_
TIM LEONARD
United States District Judge